# EXHIBIT A



# MUTUAL CONFIDENTIALITY AND NONDISCLOSURE AGREEMENT

This **MUTUAL CONFIDENTIALITY AND NONDISCLOSURE AGREEMENT** ("*Agreement*") is made and entered into as of Feb. 5 2016 ("*Effective Date*") by and between Keyssa, Inc., a Delaware corporation, and Essential Products, Inc., a Delaware corporation. In consideration of each party providing access to its confidential and proprietary information to the other party, subject to the terms and conditions of this Agreement, the parties agree as follows:

1. Purpose. The parties wish to explore a business opportunity of mutual interest (the "*Purpose*") and, in connection with this opportunity and the resulting business relationship, if any, each party ("*Discloser*") may disclose to the other ("*Recipient*") certain confidential or proprietary information which Discloser desires Recipient to treat as confidential.

2. Proprietary Information. "*Proprietary Information*" means all confidential or proprietary information disclosed by Discloser to Recipient, either directly or indirectly, in writing, orally or by inspection of tangible objects (including, without limitation, trade secrets, inventions, ideas, computer source and object code, works of authorship, know-how, improvements, discoveries, developments, designs, techniques, business, financial and marketing plans, analyses, compilations, studies and forecasts, technology and product roadmaps, present and future product integration plans, data, processes, documentation, architecture, structure and protocols, information on strategic partnerships and alliances and customer and supplier relationships, prices, the existence of any business discussions, negotiations, or agreements between Discloser and Recipient or any third party, and other technical and business information), which is conspicuously marked as "Confidential," "Proprietary" or in a similar manner or, if such information is communicated orally or visually, is identified as confidential at the time of disclosure and is confirmed in writing as being Proprietary Information within thirty (30) days after the initial disclosure; provided, however, that information that is of a nature such that a reasonably prudent business person would understand it to be confidential or proprietary shall be deemed to be Proprietary Information in the absence of such written confirmation.

3. Recipient's Obligations. Recipient shall: (i) hold all Proprietary Information in strict confidence and take precautions to safeguard the confidentiality of such Proprietary Information (which precautions shall be no less than those employed by Recipient to preserve the secrecy of its own confidential materials, but exercising not less than a reasonable degree of care); (ii) not make any use whatsoever at any time of any Proprietary Information, except (a) in connection with the Purpose or, (b) to the extent the parties enter into a business relationship, as provided in the definitive agreement executed in connection with such relationship; (iii) not copy, adapt, publish or circulate any Proprietary Information, or reverse engineer or disassemble any products, technology or tangible objects that utilize such Proprietary Information; (iv) not disclose or divulge any Proprietary Information or any information derived therefrom to any third party, except to those of Recipient's employees, officers and directors who have a legitimate "need to know" and are bound in writing to confidentiality obligations that are at least as restrictive as those set forth herein; and (v) not remove any Proprietary Information from, or transmit any Proprietary Information outside of the United States without Discloser's prior written consent. Recipient agrees and will direct its Representatives not to disclose to any person, without Discloser's prior written consent: (A) the fact that Proprietary Information has been or is being made available to Recipient, or (B) any information relating to the Purpose. Recipient shall immediately notify Discloser upon discovery of any unauthorized use or disclosure of Proprietary Information, or any other breach of this Agreement, and will cooperate with Discloser in every reasonable way to help regain possession of such Proprietary Information and prevent its future unauthorized use and disclosure. "*Representatives*" means that party's affiliates, agents, officers, directors, consultants and employees.

4. Exceptions. Recipient's obligations under Section 3 shall not apply with respect to any information that Recipient can establish with competent evidence: (i) was publicly known and made generally available in the public domain prior to the time of disclosure by Discloser; (ii) becomes publicly known and made generally available after disclosure by Discloser to Recipient through no action or inaction of Recipient or any of its Representatives; (iii) is already in Recipient's possession without restriction on use or disclosure at the time of disclosure by Discloser as shown by Recipient's files and records created prior to the time of disclosure; (iv) becomes available to Recipient without restriction on use or disclosure from a third party without a breach of such third party's obligations of confidentiality; or (v) is independently developed by Recipient without use of or reference to any Proprietary Information, as shown by Recipient's files and records created in the ordinary course of business prior to the time of disclosure.

5. Court Ordered Disclosure. Recipient shall, to the extent not prohibited by applicable law, promptly notify Discloser of any legal requirement to disclose any Proprietary Information, whether by law, court order of other legal process, and shall provide Discloser with such cooperation and assistance as reasonably requested by

1

Discloser to obtain confidential treatment, a protective order or other appropriate remedy to limit the disclosure of Proprietary Information. Recipient may disclose such portions of Proprietary Information that are legally required to be disclosed; provided that Recipient shall exercise reasonable efforts to obtain assurance that such Proprietary Information will be accorded confidential treatment.

6. Return of Information. Immediately upon (i) the decision by either party not to enter into the contemplated relationship or transaction, (ii) termination or expiration of this Agreement in accordance with Section 10, or (iii) a request by Discloser at any time, Recipient will (a) cease any use of the Discloser's Proprietary Information and (b) turn over to Discloser all manifestations of Proprietary Information, and all documents and media containing such Proprietary Information, and all copies, summaries and extracts thereof in Recipient's possession or control.

7. No Obligation. Nothing herein shall obligate either party to proceed with any transaction between them, and each party reserves the right, in its sole discretion, to terminate the discussions contemplated by this Agreement concerning a business relationship.

8. No Warranties. The Proprietary Information is provided "AS IS" and Recipient acknowledges and agrees that neither Discloser nor any of its Representatives have made any representations or warranties whatsoever, express or implied, as to the accuracy or completeness of the Proprietary Information made available by such party.

9. Ownership. As between the parties, ownership of the Proprietary Information shall remain exclusively with Discloser. Nothing in this Agreement grants either party any license or rights under any patent, copyright or other intellectual property rights of the other party, nor any rights in or to the other party's Proprietary Information, except for the right to use such Proprietary Information as expressly permitted herein.

10. Term. This term of this Agreement shall commence on the Effective Date and continue in effect for a period of five (5) years, or may be terminated by either party at any time upon thirty (30) days prior written notice to the other party. The Recipient's obligations under Sections 3 (as also limited by Sections 4 and 5) and 6 and the parties' rights and obligations under Sections 8, 9, 11 and 12 shall survive expiration or any termination of this Agreement and continue in full force and effect in perpetuity.

11. Equitable Relief. Recipient acknowledges that any unauthorized disclosure or use of Proprietary Information will constitute a material breach of this Agreement and cause substantial harm to Discloser for which damages would not be a fully adequate remedy. In the event of any such breach, in addition to other available remedies, Discloser shall have the right to seek equitable relief (without being required to post a bond or other form of security).

12. General. In the event that any of the provisions of this Agreement shall be held by a court or other tribunal of competent jurisdiction to be illegal, invalid or unenforceable, such provisions shall be limited or eliminated to the minimum extent necessary so that this Agreement shall otherwise remain in full force and effect and enforceable. Neither Party may assign or transfer any rights or obligations under this Agreement without the prior written consent of the other Party and any attempted assignment, subcontract, delegation, or transfer in violation of the foregoing will be null and void, except that a party may assign this Agreement without such consent to its successor in interest by way of merger, acquisition or sale of all or substantially all of its assets. The terms of this Agreement shall be binding upon assignees. This Agreement shall be governed by the laws of the State of California without regard to the conflicts of laws provisions thereof. The parties consent to the jurisdiction of the state and federal courts located in the County of San Francisco, California and agree that said courts have the sole and exclusive jurisdiction over any and all disputes and causes of action arising out of or relating to this Agreement or a party's performance hereunder. Notices hereunder will be effective only if in writing addressed to the relevant party as specified below and upon receipt if delivered personally or by overnight courier, or three (3) days after deposit in the U.S. mail, first-class postage prepaid. The prevailing party in any action to enforce this Agreement shall be entitled to an award of its costs and fees (including attorneys' fees and expert witness fees) incurred in connection with such action. Recipient agrees not to export, reexport, or transfer, directly or indirectly, any U.S. technical data acquired pursuant to this Agreement, or any products utilizing such data, in violation of the United States export laws and regulations. No waiver or modification of this Agreement will be binding upon either party unless made in writing and signed by a duly authorized representative of such party and no failure or delay in enforcing any right will be deemed a waiver. This Agreement supersedes all prior and contemporaneous discussions and writings and constitutes the entire agreement between the parties with respect to the subject matter hereof. This Agreement may be executed in two or more counterparts, each of which will be deemed an original, but all of which taken together shall constitute one and the same instrument. Delivery of a copy of this Agreement bearing an original signature by facsimile transmission or by electronic mail in "portable document format" shall be sufficient for purposes of evidencing execution of this Agreement.

**IN WITNESS WHEREOF,** the parties hereto have caused this Agreement to be executed as of the Effective Date.

KEYSSA, INC.

By _____

Name: _Nick Antonopoulos_

Title: _VP Sales & Business Development_

Address:  655 Campbell Technology Parkway, Suite 275
Campbell, CA 95008

Date: _February 6, 2016_

By ___Matt Hershenson___

Name: _Matt Hershenson_

Title: _Co-Founder_

Address: _380 Portage Ave, Palo Alto, CA_

Date: _____

3