QUINN EMANUEL URQUHART & SULLIVAN, LLP
Charles K. Verhoeven (Bar No. 170151)
 charlesverhoeven@quinnemanuel.com
David Eiseman (Bar No. 114758)
 davideiseman@quinnemanuel.com
Sam Stake (Bar No. 257916)
 samstake@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111-4788
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

Lance Yang (Bar No. 260705)
 lanceyang@quinnemanuel.com
865 S. Figueroa St., 10th Floor
Los Angeles, California 90017
Telephone: (213) 443 3000
Facsimile: (213) 443 3100

*Attorneys for Plaintiff Keyssa, Inc.*

KEKER, VAN NEST & PETERS LLP
Robert A. Van Nest (Bar No. 84065)
 rvannest@keker.com
Leo L. Lam (Bar No. 181861)
 llam@keker.com
Daniel Purcell (Bar No. 191424)
 dpurcell@keker.com
Matthew M. Werdegar (Bar No. 200470)
 mwerdegar@keker.com
Ryan K. Wong (Bar No. 267189)
 rwong@keker.com
Christina Lee (Bar No. 314339)
 clee@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone: (415) 391-5400
Facsimile: (415) 397-7188

*Attorneys for Defendant
Essential Products, Inc.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| KEYSSA, INC., <br><br> Plaintiff, <br> v. <br><br> ESSENTIAL PRODUCTS, INC., <br><br> Defendant. | CASE NO. 4:17-cv-05908-HSG <br><br> **JOINT [PROPOSED] STIPULATED ORDER REGARDING PRODUCTION OF ELECTRONICALLY STORED INFORMATION AND OTHER DOCUMENTS** |

IT IS HEREBY STIPULATED by and between the undersigned counsel for all parties:

**I.  GENERAL PROVISIONS**

**A.** Absent special circumstances, the parties will prepare their production documents in accordance with the agreed-upon specifications set forth below. These specifications apply to documents or electronically stored information ("ESI"), which are to be produced in this litigation. These specifications shall not apply with respect to any documents that have already been produced by the parties.

**B.** Nothing in this order or any other document relating to discovery in this matter shall be construed or interpreted as precluding a producing party from performing a responsiveness review to determine if documents captured by search terms are in fact relevant to this litigation or responsive to the requesting party's document requests. Further, nothing in this order or any other document relating to discovery in this matter shall be construed or interpreted as requiring the production of all documents captured by any search term if that document is, in good faith and consistent with the California Rules of Professional Conduct, deemed by the producing party to be not relevant to this litigation or not responsive to the requesting party's requests for production.

## II. PRODUCTION OF HARD-COPY DOCUMENTS

**A. Form of Production.** All hard copy documents shall be produced as single-page TIFF images with accompanying document-level OCR and Concordance and Opticon load files with the following metadata fields: BegBates, EndBates, Page Count, and Custodian (as referenced in Appendix A).

**B. Database Load Files/Cross-Reference Files.** Accompanying each production should be a metadata file (DAT file) using standard Concordance delimiters or caret-pipe (^|^) delimiters.[1] Each production should also include an image load file in Opticon format (OPT). The metadata file and image load file (*i.e.*, DAT and OPT files) should be provided in a self-identified "Data" folder.

**C. Coding Fields.** Absent special circumstances, documents should be produced with at least the following searchable information where applicable in accompanying delimited data files: BegBates, EndBates, BegBatesAttach, EndBatesAttach, Page Count, Custodian, and ProdVolume (as referenced in Appendix A). Custodians should be identified using the convention "last name_first name" or "Last name, First name" where applicable. Entity/departmental custodians should be

---

[1] Samples:
*Concordance*:
þBEGNUMþþENDNUMþþPAGESþþDATEþþAUTHORþþRECIPIENTþþCCþþTITLEþþDOCTYPEþ
þPOLGP000001þþPOLGP000005þþ5þ_05/20/2000_ÞSmith, JamesþþPolk, FredþþþþHappy BirthdayþþEMAILþ
*Caret-Pipe*:
^BEGNUM^|^ENDNUM^|^PAGES^|^DATE^|^AUTHOR^|^RECIPIENT^|^CC^|^TITLE^|^DOCTYPE^
^POLGP000001^|^POLGP000005^|^5^|^05/20/2000^|^Smith, James^|^Polk, Fred^|^^|^Happy Birthday^|^EMAIL^

identified with a description of the entity or department. A producing party shall use a uniform description of a particular custodian across productions. All agreed-upon custodians who were in possession of a de-duplicated Document shall be identified in the CUSTODIANOTHER metadata field to the extent reasonably possible.

**D. Bates Numbering.** Each document should be assigned a Bates number that: (1) is unique across the entire document production, (2) maintains a constant length across the entire production (*i.e.*, padded to the same number of characters), (3) contains no special characters or embedded spaces, and (4) is sequential within a given document. If a Bates number or set of Bates numbers is skipped in a production, the producing party will so note in a cover letter or production log accompanying the production. Parties will make reasonable efforts to avoid obscuring any part of the underlying image with the Bates number.

**E. Parent-Child Relationships.** Parent-child relationships (*i.e.*, the association between an attachment and its parent document) must be preserved if reasonably possible (and to the extent the parent-child relationship is reasonably apparent).

**F. Unitizing of Documents.** Absent special circumstances, when scanning paper documents, the parties must, to the extent feasible, take reasonable steps to prevent distinct documents from being merged into a single record, and to ensure that single documents are not be split into multiple records (*i.e.*, paper documents should be logically unitized). In addition, scanned paper documents must be produced as they existed in the normal course of business with information that identifies the folder (or container) structure, to the extent such structure exists and to the extent reasonably possible.

**G. Color.** Documents containing color need not be produced in color in the first instance. If good cause exists for the receiving party to request production of certain documents in color, the receiving party may request production of such documents in color. The producing party shall not unreasonably deny such requests.

## III. PRODUCTION OF ELECTRONICALLY STORED INFORMATION ("ESI")

**A.** **TIFFs.** Documents should be produced in the form of single-page, Group IV TIFFs with a minimum of 300 dpi. Each TIFF image should be named in accordance with the Bates number appearing on the first page of the image. Original document orientation should be maintained (*i.e.*, portrait to portrait and landscape to landscape). TIFF image files should be provided in a self-identified "Images" folder.

However, no party shall be required to reformat documents or data that were previously produced in other litigations, or in response to governmental or regulatory inquiries or investigations before producing such materials in this action, or acquired as a complete set from a third-party. All documents or data produced in the same format as they were produced or collected in such other matters are deemed to be in compliance with this Stipulation when produced in this matter, notwithstanding other provisions in this Stipulation. If the receiving party has a question, issue, or concern about the form of production of previously produced documents, the parties agree to meet and confer regarding the form of production.

**B.** **E-mail.** A requesting party shall limit its e-mail production requests to a total of eight custodians per producing party for all such requests. The parties may jointly agree to modify this limit without the Court's leave. The parties shall meet and confer as soon as possible to identify the custodians who are most likely to have responsive or relevant emails.

Each requesting party shall limit its e-mail production requests to a total of ten search terms per custodian per party. The parties may jointly agree to modify this limit without the Court's leave. The search terms shall be narrowly tailored to particular issues. Indiscriminate terms, such as the producing company's name or its product name, are inappropriate unless combined with narrowing search criteria that sufficiently reduce the risk of overproduction. A conjunctive combination of multiple words or phrases (e.g., "computer" and "system") narrows the search and shall count as a single search term. A disjunctive combination of multiple words or phrases (e.g., "computer" or "system") broadens the search, and thus each word or phrase shall count as a separate search term unless they are variants of the same word. A disjunctive string of patent numbers only counts as 1

term. Use of narrowing search criteria (e.g., "and," "but not," "w/x") is encouraged to limit the production and shall be considered when determining whether to shift costs for disproportionate discovery.

Within fourteen days of receiving from Plaintiff Keyssa, Inc. a disclosure of its asserted trade secrets pursuant to California Civil Procedure Code Section 2019.210, Defendant Essential Products, Inc. will produce a list of internal or code terms for its products and services that are accused of practicing the alleged trade secrets asserted in this action to the extent such internal or code terms exist, and Plaintiff Keyssa, Inc. will produce a list of internal or code terms for its products and services that allegedly practice the asserted trade secrets to the extent such internal or code terms exist. Seven days after this disclosure of lists of internal or code terms, the parties shall propose and exchange a list of custodians in compliance with the numerical limits set forth above. Seven days after this disclosure of lists of custodians, the parties shall complete any meet and confer efforts regarding the list of custodians previously exchanged. Fourteen days after finalizing the lists of custodians, each party may provide a list of search terms in compliance with the numerical limits set forth above for the other party to use in searching for emails. No later than fourteen days after receiving the list of search terms, the other party shall provide a hit count identifying the number of documents (including full document families) each search term identified during the search. The parties agree that a hit count for a single search term that exceeds 12,500 hits for a single custodian is presumptively unreasonable. The parties also agree that a hit count exceeding 100,000 hits for the total review population of a single custodian is presumptively unreasonable. The parties shall meet and confer in good faith to modify any search terms yielding presumptively unreasonable hit counts on a custodian-by-custodian and search term-by-search term basis to reduce all hit counts below the above identified hit thresholds. The requesting party may then provide a modified list of search terms (but may not change the identified custodians), and the other party shall provide a hit count identifying the number of documents each modified search term identified during the search within three business days after receiving the modified list of search terms. After disputes regarding the reasonableness of search terms for a given custodian has been resolved, the producing party shall

produce the identified emails for that custodian in a reasonably diligent manner. The parties agree to meet and confer in good faith to prioritize the production of emails for specific custodians so that emails are produced reasonably in advance of their depositions.

Nothing in this Order or the parties' agreement to limit email using the foregoing search parameters shall relieve the parties of any obligations they may have to produce specific items of responsive ESI that they know about but that do not fall within the parties' agreed-upon search parameters. To the extent a party is aware or made aware of substantial amounts of responsive ESI that has not fallen within the parties' agreed-upon search parameters, it agrees to meet and confer with the requesting party to modify the parties' agreed-upon search parameters in order to encompass such ESI. In addition, nothing in this Order shall prevent Defendant Essential Products, Inc. from filing a motion challenging the sufficiency of and/or to strike Keyssa, Inc.'s disclosures under California Civil Procedure Code Section 2019.210, and from seeking appropriate relief (including from the schedule set forth herein) from the Court.

**C. System Files.** Common system and program files as defined by the NIST library (which is commonly used by e-discovery vendors to exclude system and program files from document review and production) need not be processed, reviewed, or produced.

**D. De-Duplication.** A party is required to produce only a single copy of a responsive document, and a producing party shall de-duplicate responsive ESI across custodians by the use of MD5 or SHA-1 hash values at the parent level. However, hard-copy documents shall not be eliminated as duplicates of responsive ESI. All agreed-upon custodians who were in possession of a de-duplicated Document shall be identified in the CUSTODIANOTHER metadata field to the extent reasonably possible. Custodians should be identified using the convention "last name_first name" or "Last name, First name" where applicable. Entity/departmental custodians should be identified with a description of the entity or department. A producing party shall use a uniform description of a particular custodian across productions. If, during the course of its review, the producing party identifies additional duplicate documents, the parties reserve their rights to use a

custom de-duplication protocol but must disclose any such protocol to the receiving party prior to implementing it.

      **E.    Parent-Child Relationships.** Parent-child relationships (*i.e.*, the association between an attachment and its parent document) must be preserved if reasonably possible (and to the extent the parent-child relationship is reasonably apparent). For example, electronic documents attached to an email are to be produced contemporaneously and sequentially immediately after the parent document. Similarly, if a party produces a document with attachments, appendices or indices, those documents should be produced behind the document in the order in which they were attached.

      **F.    Metadata Fields and Processing.** To the extent reasonably available and accessible, each of the metadata and coding fields set forth in Appendix A that can be extracted from a document shall be produced for that document. The parties are not obligated to populate manually any of the fields in Appendix A if such fields cannot be extracted from a document, with the exception of the following: (1) BegProd, (2) EndProd, (3) BegAttach, (4) EndAttach, (5) Custodian, (6) Confidentiality, (7) ProdVolume. ESI items shall be processed in a manner that preserves the source native file and metadata without modification, including time, date, and time-zone metadata. ESI items shall be processed in a manner that maintains and displays hidden columns or rows, hidden text or worksheets, speaker notes, tracked changes and comments.

      **G.    Extracted Text Files.** For each document, an extracted text file should be provided along with its corresponding TIFF image file(s) and metadata. The file name of each extracted text file should be identical to that of the first image page of its corresponding document, followed by .txt. File names should not contain any special characters or embedded spaces. The text of native files should be extracted directly from the native file. However, if a document has been redacted, OCR of the redacted document will suffice in lieu of extracted text.

      **H.    Database Load Files/Cross-Reference Files.** Accompanying each production should be a metadata file (DAT file) using standard Concordance delimiters or caret-pipe (^|^) delimiters.[2] Each production should also include an image load file in Opticon format (OPT). The

---

[2] See n.1, *supra*, for samples.

metadata file and image load file (*i.e.*, DAT and OPT files) should be provided in a self-identified "Data" folder.

**I.** **Native Files.** Absent special circumstances, Audio/Video files, Excel files, .csv files, and other files that cannot conveniently be produced as TIFF images should be produced in native format ("Native Files"), unless they have redactions. Native Files should be provided in a self-identified "Natives" directory. Each Native File should be produced with a corresponding single-page TIFF placeholder image, which will contain language indicating that the document is being produced as a Native File. Native Files should be named with the beginning Bates number that is assigned to that specific record in the production (e.g., "DOC_0000000"). If a document produced as a Native File is confidential, the suffix "_CONFIDENTIAL" shall be added to the Native Files name (e.g., "DOC_0000000_CONFIDENTIAL"). A "NativeLink" entry for each spreadsheet should be included in the .DAT load file indicating the relative file path to each native file on the production media. Native Files should be produced with extracted text and applicable metadata fields as set forth in Appendix A. Redacted documents may be produced with TIFF image files and OCR in lieu of a Native File, TIFF placeholder image and extracted text file. Any metadata fields for redacted documents that would reveal privileged information shall be excluded. Each producing party will make reasonable efforts to ensure that its discovery vendor, before conversion to TIFF, reveals hidden data from redacted Native Files that are produced as TIFF image files and will be formatted so as to be readable. (For example, column widths should be formatted so that numbers do not appear as "#########".) The producing party shall exercise reasonable, good faith efforts to maintain all collected Native Files that may be relevant in a manner that does not materially alter or modify the file or the metadata other than as provided.

**J.** **Structured Data.** To the extent responding to a discovery request requires production of ESI contained in a database, the producing party may query the database for discoverable information and generate and produce a report in a reasonably usable and exportable electronic format (for example, in Excel or .csv format). The first line of each such file will, to the extent possible, show the column headers for each field of data included. The parties shall meet and

confer to finalize the appropriate data extraction and production format for specific information contained in a database. Upon review of the reports, the requesting party may make reasonable requests for additional information to explain the database scheme, codes, and abbreviations or to request reports in different formats. In the event that a requesting party believes the reports provided are inadequate or otherwise insufficient, the parties agree to meet and confer about the production of additional or alternative information or reports, including potentially native database information. The foregoing is without prejudice to any Parties' right to request on-site access to any ESI database, including the SAP and RAP systems referenced in Plaintiffs' Complaint (Dkt. No. 1, at ¶¶ 50, 107 and 171).

**K.  Requests for Other Native Files.**  Other than as specifically set forth above, a producing party need not produce documents in native format. If good cause exists for the receiving party to request production of certain documents in native format, the receiving party may request production in native format by providing (1) a list of the Bates numbers of documents it requests to be produced in native format, and (2) an explanation of the need for reviewing such documents in native format. The producing party shall not unreasonably deny such requests. Each document produced in response to such requests shall be produced with a "NativeLink" entry in the .DAT load file indicating the relative file path to each Native File on the production media and all extracted text and applicable metadata fields set forth in Appendix A.

**L.  Confidentiality Designations.** If a party reduces Native Files or other ESI designated "CONFIDENTIAL," "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or otherwise pursuant to the operative protective order, to hard-copy form, it shall mark the hard copy with the appropriate designation.

**M.  Color.**  Documents containing color need not be produced in color in the first instance. If good cause exists for the receiving party to request production of certain documents in color, the receiving party may request production of such documents in color. The producing party shall not unreasonably deny such requests.

## IV. PROCESSING OF THIRD-PARTY DOCUMENTS

**A.** A party that issues a non-party subpoena ("Issuing Party") may include a copy of this Stipulation with the subpoena and request that the non-party produce documents in accordance with the specifications set forth herein.

**B.** The Issuing Party is responsible for producing any documents obtained pursuant to a subpoena to all other parties but may produce them in the same form as received.

**C.** Nothing in this stipulation is intended to or should be interpreted as narrowing, expanding, or otherwise affecting the rights of the parties or any third parties to object to a subpoena.

## V. PRIVILEGE LOGS

**A.** For all documents withheld on the basis of privilege, the parties agree to furnish logs which comply with the legal requirements under federal law, but at a minimum will include the following information:

1. A unique number for each entry on the log.
2. The date of document. For emails this should be the sent date of the document and for loose ESI this should be the last-modified or create date of the document.
3. The Author of the document. For emails this should be populated with the metadata extracted from the "Email From" field associated with the file. For loose ESI, this should be populated with the metadata extracted from the "Author" field; if such field contains generic information such as the company name, a party may substitute the information contained in the "Custodian" metadata field.
4. Recipient(s) of the document where reasonably ascertainable. For emails this should be populated with the metadata extracted from the "Email To" field associated with the file. Separate columns should be included for the metadata extracted from the "Email CC" and "Email BCC" fields, where populated.
5. A description of why privilege is being asserted over the document. This

description should include information sufficient to identify if the document contained attachments over which privilege is also being asserted.

      6. The type of privilege being asserted: (a) AC for Attorney/Client, (b) WP for Attorney Work Product, (c) CI for Common Interest.

**B.** The parties shall identify on their logs where counsel is present in conversation, specifically for columns 1(c) and (d) noted above. Where counsel creating the privilege is not readily ascertainable from columns 1(c) and (d) above, the parties shall include a reference to counsel in the privilege description field described in 1(e) above.

**C.** Privilege logs shall be produced within thirty (30) days of each production. Regardless of the date of the close of fact discovery, the receiving party shall have thirty (30) days from the date of receipt of any privilege log to review and register complaints about said logs. If a producing party produces custodial documents for a deposition that will take place within 30 days of the production date, the parties agree to meet and confer in good faith to provide the receiving party with a privilege log for such documents prior to the related deposition.

## VI. REDACTION LOGS

**A.** For each document that is redacted, in addition to providing the redacted version of the document, the parties agree to furnish logs which comply with the legal requirements under Federal Law, but at a minimum will include the following information:

      1. The Begin Production ID of the document.

      2. The End Production ID of the document.

      3. A description of why privilege is being asserted over the document, or some other explanation as to why the document was redacted, such as "Not Responsive to RFPs".

      4. If the document was redacted for privilege concerns, the type of privilege being asserted: (a) AC for Attorney/Client, (b) WP for Attorney Work Product, (c) CI for Common Interest.

**B.** Redaction logs may be produced on a rolling basis or after all productions are

complete, but prior to the close of discovery. If the log(s) are produced after all productions are complete, the receiving party shall have thirty (30) days from the date of receipt to review and register complaints about said log(s), regardless of the date of the close of fact discovery.

## VII. EXCEPTION TO LOGGING - POST FILING DATE PRIVILEGE DOCS

Communications involving inside or outside counsel for the parties related to this case that were created on or after October 16, 2017 need not be included in the parties privilege log(s) as a matter of course. These exceptions are made without prejudice to any party's ability and right to assert that such materials are discoverable and not privileged or protected. These exceptions also do not apply to the redacted documents and their respective redaction log(s).

## VIII. INADVERTENT PRODUCTION OF PRIVILEGED INFORMATION.

Pursuant to Federal Rule of Evidence 502(d), the inadvertent production of privileged or work product protected data is not a waiver in the pending case or in any other federal or state proceeding. The receiving party shall not use produced data that the producing party asserts is attorney-client privileged or work product protected to challenge the privilege or protection. The mere production of privileged information in a litigation as part of a mass production shall not itself constitute a waiver for any purpose.

In addition, the inadvertent production of any privileged document, information or thing shall not be deemed a waiver of such privilege or otherwise affect the producing party's right to seek return or destruction of the inadvertently produced document, information, or thing. The party receiving the document(s) that appears to be privileged shall promptly notify the producing party upon becoming aware that the document(s) may have been inadvertently produced and in any event, before making use of said document.

In the event that documents which are claimed to be privileged or subject to the work-product doctrine are inadvertently produced, such documents shall be destroyed or returned by the receiving party within two (2) calendar days of any written request therefore. The receiving party shall return or destroy all copies of the inadvertently produced document(s) and not retain any copies, notes, or summaries of said documents. If the receiving party seeks to challenge the privileged nature of the

document(s), the receiving party must still destroy or return the document(s) to the producing party but may then seek re-production of the document(s).

It is the desire, intention, and mutual understanding of the parties that all inadvertently or unintentionally disclosed or produced privileged information shall be treated as confidential and may not be disclosed by the receiving party to persons or entities other than the producing party without the written consent of the producing party.

If a party who received documents or information over which a privilege is asserted has disclosed such documents or information to any person or in any circumstance, the party must immediately: (a) notify, in writing, the producing party of the disclosure; (b) use best efforts to retrieve or confirm destruction of all copies of the documents or information over which the privilege is asserted; and (c) notify, in writing, the producing party regarding whether all copies have been retrieved or destroyed.

The parties further agree that no motion to compel or other argument for waiver of privilege will be raised based upon the inadvertent or unintentional production or disclosure of privileged information.

Nothing herein shall prevent the receiving party from challenging the propriety of the claim of attorney client privilege, work product protections or other applicable privilege or immunity designation by submitting a written challenge to the court. The receiving party, however, may not disclose the contents of a challenged document in such a written challenge to the court.

## IX. MISCELLANEOUS PROVISIONS

**A.** Nothing in this protocol shall be interpreted to require disclosure of information protected by the attorney-client privilege, work-product doctrine, or any other applicable privilege or immunity. The parties do not waive any objections as to the production, discoverability, admissibility, or confidentiality of documents and ESI.

IT IS SO STIPULATED, THROUGH COUNSEL OF RECORD.

| | | |
|---|---|---|
| Dated: March 15, 2019 | | Respectfully submitted, |

QUINN EMANUEL URQUHART & SULLIVAN, LLP


By: */s/ David Eiseman*
David Eiseman
Charlie K. Verhoeven
Sam Stake

QUINN EMANUEL URQUHART & SULLIVAN, LLP
50 California Street, 22nd Floor
San Francisco, California 94111
(415) 875-6600
(415) 875-6700 (facsimile)

Lance Yang
865 S. Figueroa St., 10th Floor
Los Angeles, California 90017
(213) 443 3000
(213) 443 3100 (facsimile)

*Attorneys for Plaintiff Keyssa, Inc.*

Dated: March 15, 2019                    Respectfully submitted,

KEKER, VAN NEST & PETERS LLP


By: */s/ Ryan K. Wong*
Robert A. Van Nest
Leo L. Lam
Daniel Purcell
Matthew M. Werdegar
Ryan K. Wong
Christina Lee

KEKER, VAN NEST & PETERS LLP
633 Battery Street
San Francisco, CA 94111-1809
Telephone:    (415) 391-5400
Facsimile:    (415) 397-7188

*Attorneys for Defendant Essential Products, Inc.*

# ATTESTATION

Pursuant to Civil Local Rule 5-1(i)(3), I attest that all other signatories listed, and on whose behalf this filing is submitted, concur in the filing's content and have authorized the filing.

Dated: March 15, 2019

*/s/ David Eiseman*
David Eiseman

PURSUANT TO STIPULATION, IT IS SO ORDERED.

DATED: 3/18/2019           *Haywood S. Gilliam Jr.*
                           Honorable Haywood S. Gilliam, Jr.
                           United States District Judge

# APPENDIX A

| Field | Description |
|---|---|
| BegBates | Page ID of first page in a document. |
| EndBates | Page ID of last page in a document. |
| BegAttach | BegBates of parent record. |
| EndAttach | Page ID of last page in a document family |
| Custodian | Textual value of custodian. |
| CustodianOther | Textual value of all custodians who contained a duplicate copy of the record. |
| DateSent | Sent date of an e-mail message (Format: MM/DD/YYYY). |
| TimeSent | Time the e-mail message was sent. |
| DateReceived | Received Date of an e-mail message (format: MM/DD/YYYY) |
| TimeReceived | Time the e-mail message was received. |
| EmailSubject | Subject of the e-mail message. |
| From | Author of the e-mail message. |
| To | Main recipient(s) of the e-mail message. |
| CC | Recipient(s) of "Carbon Copies" of the e-mail message. |
| BCC | Recipient(s) of "Blind Carbon Copies" of the e-mail message. |
| ConversationIndex | The conversation index extract from the produced email message where available. |
| DateCreated | Creation date of the electronic file. |
| TimeCreated | Creation time of the electronic file. |
| DateLastMod | Date the electronic file was last modified. |
| TimeLastMod | Time the electronic file was last modified. |
| Author | Author field value pulled from metadata of the electronic file. |
| LastAuthor | LastAuthor field value pulled from metadata of the electronic file. |
| Title | Title field value extracted from the metadata of the electronic file. |
| Filename | Original filename of the electronic file. Contains subject of e-mail message for e-mail records. |
| FileExtension | File extension or other description of the email/electronic file type. |
| File Path | Logical file path that shows where original file was stored. |
| Filesize | Size of native file, in bytes. |
| MD5Hash | MD5 hash-128-bit output. |
| PgCount | Number of pages in a document. |

-17- Case No. 4:17-cv-05908-HSG
STIPULATED [P~~ROPOSED~~] ESI ORDER

| Field | Description |
|---|---|
| NativeLink | Logical file path to the file produced in native format |
| TextLink | Path to the associated multi-page/document level text file for each produced document. |
| ProdVolume | The production volume associated with the produced file. |
| Confidentiality | The confidential designation given to the document |